UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM STONER,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. C14-1293-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

William Stoner appeals the ALJ's decision finding him not disabled. He contends the ALJ failed to account for limitations assessed by reviewing medical consultants, Alex Fisher, Ph.D., and Eugene Kester, M.D., and that the Court should therefore remand the matter for further administrative proceedings. Dkt. 12 at 1. The Court agrees, and for the reasons below, recommends the Commissioner's final decision be **REVERSED** and the matter be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## THE ALJ'S DECISION

The ALJ found, at steps one through three that Mr. Stoner last worked in July 2011; that degenerative disc disease, chronic obstructive pulmonary disease, hepatitis C, hemochromotosis, bipolar disorder, general anxiety disorder, and panic disorder with agoraphobia were severe

REPORT AND RECOMMENDATION - 1

impairments; and that these impairments did not meet the requirements of the Listings.[1]  Tr.  19.  The ALJ found that with these impairments, Mr. Stoner retained the residual functional capacity ("RFC") to perform light work with the following limitations: he had multiple postural and exposure restrictions; he could perform simple jobs that could be learned in 30 days or less with simple work-related decisions and few, if any, workplace changes; and he could have occasional and superficial interaction with the public.  Tr.  21-2.  Based on this RFC, the ALJ found at step four that Mr. Stoner was not disabled because he could perform past work as a power screwdriver operator or construction worker.[2]  Tr.  28.  The ALJ further found Mr. Stoner not disabled at step five based on the Vocational Expert's (VE) testimony that there were other jobs Mr. Stoner could perform.  Tr.  29.  As the Appeals Council denied Mr. Stoner's request for review, the ALJ's decision is the Commissioner's final decision.  Tr.  1.[3]

## DISCUSSION

Mr. Stoner raises only one issue: that the ALJ harmfully erred by failing to account for all limitations assessed by reviewing agency medical consultants, Alex Fisher, Ph.D., and Eugene Kester, M.D., as to his social functioning.  Dkt. 12 at 1.  The ALJ accommodated some social limitations in his RFC determination, restricting Mr. Stoner to occasional and superficial interaction with the public.  Tr.  22.  Mr. Stoner argues the ALJ erred by failing to include limitations pertaining to interaction with co-workers.  Dkt. 12 at 4.  He bases this contention on the opinions of Alex Fisher, Ph.D. and Eugene Kester, M.D.  There is no dispute that both doctors stated Mr. Stoner was able to handle a small group of co-worker interactions and will

---

[1] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[2] Mr. Stoner contends that the ALJ erroneously determined that he performed his prior construction work at a light level.  However, because the ALJ cited additional light jobs at steps four and five, Mr. Stoner concedes that this issue is not dispositive.  Tr.  3, fn. 1.
[3] As the other portions of the procedural history are not at issue, or necessary to resolve the case, they are not discussed.

REPORT AND RECOMMENDATION - 2

become more comfortable as becomes more accustom to them, and that was best with minimal public interactions.  Tr.  158, 177.  At issue is whether the statement constitutes a limitation that the ALJ should have accounted for in her RFC determination, as Mr. Stoner claims, or simply "a mere observation" that "does not prescribe any specific limitations" as the  Commissioner claims.  Dkt. 18, at 4, 5.

The record shows, and the parties agree, that Drs. Fisher and Kester completed Mental Residual Functional Capacity Assessments ("MRFC").  Dkt.18 at 3; Dkt. 19 at 3.  There are several iterations of the MRFC.  One version contains three major sections: "Summary Conclusions," "Remarks," and "Functional Capacity Assessment."  *See* Program Operations Manual System (POMS) DI 24510.060(B), *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510060.  In this version, Section I sets forth "Summary Conclusions," and contains "check box" ratings for the degree of limitation of mental activities needed for sustaining work on a consistent basis.  This section is considered "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  POMS DI 24510.060(B)(2)(a).  The actual RFC assessment which an ALJ should consider is contained the narrative section that is written by the consultant in Section III, the "Functional Capacity Assessment."  POMS DI 24510.060(B)(4)(a).  *See*, *Coffman v. Colvin*, No. C12-5812-JLR-BAT, 2013 WL 355422, at *2-*3 (W.D. Wash. July 10, 2013).

Drs. Fisher and Kester completed MRFC's with a different format.  The format they utilized has four categories of mental limitations—understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  Tr.  157-8.  Within each category, there are questions pertaining to limitations regarding various mental activities, such as

REPORT AND RECOMMENDATION - 3

the ability to understand and remember detailed instructions, ability to make-simple work related decisions, and the ability to ask simple questions or request assistance.  Tr. 157-8.  The form explains that the questions are designed to assist in determining the claimant's ability to perform sustained work activity and are not the assessed RFC. *See e.g.* Tr. 157.  Instead, the MRFC form that the doctors used states "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation."  Tr.  157.

Thus the new form essentially sets forth mini-RFC narrative assessments for each of the four functional domains of understanding and memory, concentration and persistence, social interactions, and adaptation.  These mini-RFC narratives are found after the questionnaire portion of each category and are indicated by the directive that the doctor  "[e]xplain in narrative form . . . the limitations indicated above."  Tr.  157-8.

Drs. Fisher and Kester responded to the directive "[e]xplain in narrative form the social interaction limitations indicated above," with the statement that Mr. Stoner is able to handle a small group of co-workers and does best with minimal public interactions.  Tr.  158.  The doctors specifically included the small group co-worker issue in the portion of the form that is designated for an RFC assessment, and which the form describes as the *limitations* to social interactions.  Had the reviewing consultants intended the statement to be a mere observation or recommendation, as the Commissioner claims, the form provided an outlet other than the RFC section.  The MRFC form provides that "Any other assessment information deemed appropriate can be recorded in the MRFC- Additional Explanation text box."  Tr.  157.

Thus, the Acting Commissioner's argument that the statement is a mere recommendation

REPORT AND RECOMMENDATION - 4

or observation is not supported by the record and is unpersuasive.  If anything, by placing the small group co-worker issue in the narrative portion regarding Mr. Stoner's social interaction limitations, the doctors were indicting their intent to include the small group co-worker limitation in the RFC.

The medical record also supports the social interaction limitation to a small group of co-workers.  Drs. Fisher and Kester both opined Mr. Stoner was moderately limited in his ability to work in coordination or proximity to others.  Tr.  157-8, 175-7.  Examining psychologist Ellen Walker Lind, Ph.D. noted that Mr. Stoner would have difficulties with workplace social interactions.  "He also has anger-management issues that would interfere with work relationships."  Tr.  383.  She opined he would need a work environment with limited personal interaction.  Tr.  383.  Another examining provider, Anselm Parlatore, M.D., opined Mr. Stoner would have marked limitations in his ability to communicate and perform effectively in a work setting, even with limited public contact.  Tr.  335.  These specialists both found that Mr. Stoner required limited social interaction beyond limited public contact.

In short, the medical evidence of record and the structure of the assessment form persuade the Court that Drs. Fisher and Kester intended to include a limitation to working with a small group of co-workers in Mr. Stoner's mental RFC.  "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. § 416.927(e)(2)(i).  Given this expertise, an ALJ cannot ignore these opinions.  Social Security Ruling 96-6p.  The ALJ was required to weigh the limitations and accept or provide reasons for rejection.  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why

REPORT AND RECOMMENDATION - 5

the opinion was not adopted." SSR 96-8p.

Here, the ALJ omitted a limitation from the mental RFC that was assessed by agency consultants. The ALJ provides no reason for this omission, even though the ALJ noted the limitation in her analysis. "Drs. Fisher and Kester opined that the claimant is moderately limited in his ability to interact appropriately with the public, get along with co-workers and peers without distracting them or exhibiting behavioral extremes . . . The opinions of Drs. Fisher and Kester are consistent with and supported by the evidence of record." Tr. 27. However, while the ALJ purported to give "great weight" to these opinions, the ALJ committed harmful error by omitting an important functional limitation without comment. Tr. 27.

The Acting Commissioner claims that any error is harmless. Dkt. 13 at 6. An error is harmless if it is inconsequential to the determination of non-disability. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The burden to show prejudice is on Mr. Stoner. *See*, *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). The Acting Commissioner claims harmless error on the grounds that Mr. Stoner failed to meet his burden by showing an impact on his "substantial rights." Dkt. 13 at 6.

The record belies the Commissioner's claim. The ALJ omitted, without comment, a limitation included in a medical opinion and intended as part of the mental RFC. Consequently, The ALJ's RFC determination failed to account for all limitations assessed by the reviewing doctors. 20 C.F.R. § 416.945(a); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). This failure undermines the ALJ's determinations at both steps four and five of the disability analysis.

At step four, the ALJ must determine if the claimant is capable of performing his past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The burden is on Mr.

REPORT AND RECOMMENDATION - 6

Stoner to prove that he can no longer perform his past work. *Id*. However, the ALJ must make accurate factual findings to support the step four conclusion. *Id*. "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id*. at 844-5 (quoting 20 C.F.R. §§ 404.1520(e), 416.920(e)). This includes inquiry into the physical and mental demands of that work. *Id*. at 845. Here, the ALJ did not inquire into the nature of the social interaction required among co-workers in Mr. Stoner's prior work as a power screwdriver operator or construction worker. Because the RFC failed to account for the small group co-worker limitation assessed by the consulting physician, the ALJ did not consider whether the levels of social interaction with co-workers would cause Mr. Stoner's prior work to surpass his mental capacity, and harmfully erred at step four.

At step five, the burden shifts to the Commissioner to show that Mr. Stoner can perform other work available in significant numbers in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). To meet this burden, the ALJ solicited testimony from a vocational expert through hypothetical questions. *Id*. at 1100-1101, Tr. 62-5. The ALJ, however, failed to meet the step five burden because the vocational expert identified other jobs based on an incomplete RFC. "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422-3 (9th Cir. 1988). When the hypothetical is not supported by the record and does not include all the limitations, the testimony of the vocational expert has no evidentiary value. *Id*. The vocational expert did not consider or testify about the impact that a limitation to a small group of co-workers might have on Mr. Stoner's ability to perform his past relevant work or other jobs available in the economy. Without consideration of the small group limitation, the vocational expert's testimony did not incorporate all of Mr. Stoner's restrictions when identifying other

REPORT AND RECOMMENDATION - 7

work possibilities.  The testimony has no evidentiary value and cannot support the ALJ's decision that Mr. Stoner can perform his past relevant work and other jobs in the economy.  *Id*. at 423.  Accordingly, because of the errors at steps four and five, the ALJ's ultimate conclusion of non-disability is fatally flawed.  The error is not harmless and requires reversal.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should include the small group limitation in the RFC, develop the record as necessary, proceed to steps four and five, and obtain new testimony as needed from a vocational expert that reflects this revised RFC.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **April 7, 2015.**  If no objections are filed, the Clerk shall note the matter for April 10, 2015as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

DATED this 24th day of March, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge